UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KAREN LOUGHERY,

                        Plaintiff,

            v.

FUTURE CENTURY LIMOUSINE, LLC, d/b/a
FUTURE LIVERY, SHADYS ENTERPRISES,
LLC and ROBERT SWIFT,

                       Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: September 24, 2013

**MEMORANDUM**
**OPINION & ORDER**

11 Civ. 5108 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        Plaintiff Karen Loughery hired Defendant Future Century Limousine, LLC, d/b/a

Future Livery ("Future") to drive her and her guests from Easton, Connecticut to Manhattan,

and back.  Future "farmed-out" the return trip to Shadys Enterprise, LLC ("Shadys"), another

limousine company, and one of its drivers, Robert Swift.  On the return trip, and while in

Connecticut, the van in which Plaintiff and her guests were riding veered off the road, struck a

tree and light pole, and flipped over.  Plaintiff suffered serious injuries.

        On October 25, 2011, Plaintiff filed an Amended Complaint against Future,

Shadys, and Swift.  (Dkt. No. 21)[1]  The Amended Complaint includes, inter alia, a direct

negligence claim against all Defendants, a vicarious liability/negligence claim against Future,

and a negligent hiring claim against Future.  (Am. Cmplt., First, Second, Fourth Causes of

Action)  On November 4, 2011, Shadys and Swift answered the amended complaint and

subsequently filed cross-claims against Future.  (Dkt. No. 16)

        Plaintiff has moved for summary judgment on the issue of liability as against all

three defendants.  (Dkt. No. 33)  Future has moved for summary judgment on Plaintiff's claims

---

[1]  The Amended Complaint was not docketed until November 23, 2011.  (Dkt. No. 21)

against it, and on Shadys and Swift's cross-claims against Future.  (Dkt. No. 36)  For the

reasons stated below, Plaintiff's motion will be granted in part and denied in part,[2] and Future's

motion will be granted in part and denied in part. [3]

## BACKGROUND

I.    **PLAINTIFF'S RESERVATION WITH FUTURE**
      **AND FUTURE'S RETENTION OF SHADYS**

On September 22, 2010, Plaintiff Loughery made a reservation with Future to

transport herself and several guests from Easton, Connecticut to Pacha, a nightclub in

Manhattan, with a stop in the Bronx.  (Def. R. 56.1 Stmt. ¶ 94)[4]  Plaintiff booked the trip for the

evening of October 2, 2010.  (Id.)  Loughery arranged for a pick-up at Pacha on October 3, 2010

at 2:30 a.m., for the return trip to Easton – again with a stop in the Bronx.  (Def. R. 56.1 Stmt. ¶

95; Pltf. R. 56.1 Stmt. ¶¶ 16-17)

Plaintiff made her reservations through Future's website (Pltf. R. 56.1 Stmt. ¶

12), and paid Future $551.07 for its services.  (Pltf. R. 56.1 Stmt. ¶ 19)  During the evening of

October 1, 2010, the day before the trip, Future assigned the job to "Gino," one of its drivers.

(Def. R. 56.1 Stmt. ¶ 97; Pltf. R. 56.1 App., Ex.13; Pltf. R. 56.1 Stmt. ¶ 27)

---

[2]  Plaintiff has not briefed the issue of whether she is entitled to summary judgment against
Future on her negligent hiring claim.  See Am. Cmplt., Fourth Cause of Action.  Accordingly,
her motion for summary judgment against Future as to liability on the Fourth Cause of Action
will be denied.

[3]  Future has not briefed the issue of whether it is entitled to summary judgment on Shadys and
Swift's cross-claims against Future.  Accordingly, Future's motion for summary judgment on
Shadys and Swift's cross-claims will be denied.

[4]  To the extent that this Court relies on facts drawn from Local Rule 56.1 statements, it does so
because the opposing party has either not disputed those facts or has not done so with citations
to admissible evidence.  See Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003)
("If the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1
statement, that fact will be deemed admitted." (citations omitted)).

Later on October 1, 2010 – at a family gathering – Karim Douich, Future's owner, arranged for the return trip to be performed by a Shadys driver, rather than by "Gino." (Pltf. R. 56.1 Stmt. ¶ 28; Pltf. R. 56.1 App., Ex. 13)  Shadys is owned by Douich's wife's cousin's husband.  (Id. ¶¶ 29, 30)  Future had "farmed-out" one other job to Shadys, in May 2010; Shadys has never sent work to Future.  (Def. R. 56.1 Stmt. ¶ 102)  Future did not at that time inform Plaintiff that it had "farmed-out" the return trip to Shadys.  (Id. at 28, 29)

Future provided Shadys with the necessary information for the return trip, including Plaintiff's name and cell phone number; the date, time and place of pick-up of Plaintiff and her guests; the return stop in the Bronx; and the final destination in Easton.  (Pltf. R. 56.1 Stmt. ¶¶ 35, 36; Pltf. R. 56.1 App., Ex. 15)  Shadys agreed to perform the return trip for $200, to be paid by Future.  (Id. ¶ 33; Def. R. 56.1 Stmt. ¶101)

## III.    THE ACCIDENT AND PLAINTIFF'S INJURIES

On the evening of October 2, 2010, Plaintiff and her guests were picked-up in Easton by a man driving a beige or gray van.  (Pltf. R. 56.1 Stmt. ¶ 44)  The van had no signage, but the driver told Plaintiff that he was from Future and confirmed the destination address with her.  (Pltf. R. 56.1 Stmt. ¶¶ 43-44, 46)

Between 3:00 and 3:30 a.m., Plaintiff and her guests left Pacha.  (Id. ¶ 47)  They met Defendant Robert Swift, who was sitting outside the club in a van.  (Id. ¶ 48)  According to Plaintiff, the van looked like the same van that had picked them up in Easton.  (Id. ¶ 56)

The parties dispute whether Swift told Plaintiff that he was from Future. Plaintiff testified that Swift told her that he was from Future and that he knew where to go. (Pltf. R. 56.1 App., Ex. 6 (Loughery Dep.) at 53-57; Pltf. R. 56.1 Stmt. ¶¶ 49-50)  Swift testified that "[s]omebody did come up to the van when I was sitting out there.  And they were like, are

3

you the guy that's supposed to bring us to Connecticut?  And I was like, yes."  (Pltf. R. 56.1

App., Ex. 18 (Swift Dep.) at 45)  Swift also testified that it is his practice never to discuss with a

customer what company he is working for.[5]  (Pltf. R. 56.1 App., Ex. 18 (Swift Dep.) at 45)

When Plaintiff approached Swift, the hood of the van was up, and he appeared to

be having trouble with the battery.  (Pltf. R. 56.1 Stmt. ¶ 54)  Swift told Plaintiff that he needed

a boost.  (Id. ¶ 55)  Plaintiff then called Future to complain, and spoke with Douich.  (Id. ¶¶ 58,

61)  Douich told Plaintiff that Future did not have another van that could accommodate her

party.  (Id. ¶ 59)  The parties dispute other aspects of this conversation.

Douich testified that he told Plaintiff "to just calm down, it's not my driver, it's,

you know, it's – I'm going to find out what's going on, it's not my vehicle, it's not my driver,

I'm going to find out what's going on."  (Pltf. R. 56.1 App., Ex. 11 (K. Douich Dep.) at 151-54)

Plaintiff denies this account, and claims that she did not learn until long after the accident that

the van and driver were not from Future.  (Pltf. R. 56.1 Stmt. ¶ 40)  In any event, after his

conversation with Plaintiff, Douich called Shadys to find out what was wrong with the van.

(Pltf. R. 56.1 App., Ex. 11 (K. Douich Dep.) at 153)

At approximately 4:25 a.m., Swift succeeded in starting the van.  (Pltf. R. 56.1

Stmt. ¶ 60)  By that time, three of Plaintiff's guests had left in a cab.  (Id.)  Swift called Douich

---

[5]  When asked at his deposition whether Loughery asked him – when she came out of Pacha –
whether he was from Future, Swift stated:

   I don't remember that, but if I was, I never said nothing, because when I work for a guy,
   they always say, "Don't tell them who you're working for.  You're just driving for
   somebody, and you're just networking."  So I never say nothing.

   I just say, "I'm the driver here to pick you up," . . . .

(Pltf. R. 56.1 App., Ex. 18 (Swift Dep.) at 45)

to tell him that he had gotten the van started and that they were on their way back to Easton.
(Id. ¶ 63)

Swift drove the van onto Interstate 95 and entered Connecticut, where Plaintiff felt the van veer off the road.  (Id. ¶ 67)  The van collided with a tree and light pole on the right shoulder of Interstate 95, rolling over and then resting on its side.  (Id. ¶¶ 71-76)  Police and emergency workers arrived at the scene.  The police prepared an accident report, which states that the accident occurred in Greenwich, Connecticut, near exit 5 on Interstate 95, Northbound. (Id. ¶ 72)  The accident report identifies the driver as Robert Swift and the owner of the van as Shadys Enterprises, and concludes that Swift was at fault.  (Id. ¶¶ 73, 82)

"Kawtar," a Shadys driver, called Douich to tell him about the accident.  (Id. ¶ 84)  Douich then called Shadys' owner, who told Douich that he had seen the van overturned on the highway.  (Id. ¶ 85)  Douich also called Swift and Plaintiff, but neither answered their phones.  (Id. ¶ 86)

Plaintiff suffered a "degloving" injury to her right foot and ankle and a fracture to her toe.  (Id. ¶ 89)  These injuries caused Plaintiff severe pain.  (Id. ¶ 87)  She was in the hospital for three weeks, and underwent several surgeries during that time.  (Id. ¶ 91)

## IV.    PROCEDURAL BACKGROUND

On March 30, 2011, Plaintiff filed this action in Supreme Court of the State of New York, Bronx County.  (Dkt. No. 1)  Future removed the case to this Court (Dkt. No. 1), and on July 29, 2011, Future filed a third-party complaint against Shadys and Swift.  (Dkt. No. 6)  On September 21, 2011, Shadys and Swift asserted a counterclaim against Future.  (Dkt. No. 12)  On October 25, 2011, Plaintiff filed an Amended Complaint against Future, and added

Shadys and Swift as defendants.  (Dkt. No. 21)  Shadys and Swift answered the amended

complaint and filed cross-claims against Future on November 4, 2011.  (Dkt. No. 16)

On October 15, 2012, Plaintiff moved for summary judgment on liability as to all

Defendants.  (Dkt. No. 33)  On October 15, 2012, Future moved for summary judgment on

Plaintiff's claims against it, and on Shadys and Swift's cross-claims against Future.  (Dkt. No.

36)

## DISCUSSION

## I.   SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is warranted

where the moving party "shows that there is no genuine dispute as to any material fact" and that

it "is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A dispute about a

'genuine issue' exists for summary judgment purposes where the evidence is such that a

reasonable jury could decide in the non-movant's favor."  Beyer v. Cnty. of Nassau, 524 F.3d

160, 163 (2d Cir. 2008).

A court deciding a summary judgment motion must "'resolve all ambiguities,

and credit all factual inferences that could rationally be drawn, in favor of the party opposing

summary judgment.'"  Spinelli v. City of New York, 579 F.3d 160, 166 (2d Cir. 2009) (quoting

Brown v. Henderson, 257 F.3d 246, 251 (2d Cir. 2001)).  However, a "'party may not rely on

mere speculation or conjecture as to the true nature of the facts to overcome a motion for

summary judgment. . . .[M]ere conclusory allegations or denials . . . cannot by themselves

create a genuine issue of material fact where none would otherwise exist.'"  Hicks v. Baines,

593 F.3d 159, 166 (2d Cir. 2010) (alterations in original) (quoting Fletcher v. Atex, Inc., 68

F.3d 1451, 1456 (2d Cir. 1995)).

"The same standard applies where, as here, the parties filed cross-motions for summary judgment. . . ." Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001). "[W]hen both parties move for summary judgment, asserting the absence of any genuine issues of material fact, a court need not enter judgment for either party.  Rather, each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." Id. (internal citation omitted).

Where, as here, Shadys and Swift, have chosen "the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).  Even an unopposed motion for summary judgment must "fail where the undisputed facts fail to show that the moving party is entitled to judgment as a matter of law." D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006) (quoting Champion v. Artuz, 76 F.3d 483, 486 (2d Cir. 1996)) (internal quotation marks omitted).

## II.   CHOICE OF LAW

This Court's jurisdiction is based on diversity of citizenship.  See 28 U.S.C. § 1332.[6]  The parties agree that Connecticut law governs.  (Pltf. Br. 13-14, Future Br. 3-5)[7]

## III.   PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

---

[6]  Plaintiff is a New York resident.  (Am. Cmplt. ¶ 1)  Future is a Connecticut corporation with its principal place of business in Fairfield, Connecticut.  (Am. Cmplt. ¶¶ 2-3)  Shadys is a Connecticut corporation with its principal place of business in Ansonia, Connecticut.  (Am. Cmplt. ¶¶ 29-30)  Swift is a Connecticut resident.  (Am. Cmplt. ¶ 60)

[7]  As discussed below, Plaintiff argues that if the Court rules that Connecticut law does not recognize the "apparent agency" theory of liability in tort cases, the Court should apply New York law on this issue.  (Pltf. Opp. Br. 19)

Plaintiff has moved for partial summary judgment on the issue of liability against all Defendants.  (Dkt. No. 33)  Plaintiff argues that Swift, as an operator of a motor vehicle, owed a duty of care to Plaintiff as his passenger, and that he breached that duty, causing Plaintiff to sustain serious injuries.  (Pltf. Br. 15)  Plaintiff also claims that Shadys, the owner of the passenger van involved in the accident, is vicariously liable for Swift's negligence as a matter of law.  (Pltf. Br. 16)  Shadys and Swift have filed no opposition to Plaintiff's motion.[8]

As to Future, Plaintiff claims that it "(1) breached its duty of care owed to Plaintiff as a common carrier . . . or, in the alternative, (2) [is] vicariously liable to Plaintiff as the principal of the undisclosed agent, Shadys."  (Pltf. Br. 2)

## A.   Applicable Law

### 1.   Negligence

"'The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury. . . . Duty is a legal conclusion about relationships between individuals, made after the fact, and [is] imperative to a negligence cause of action. . . . Thus, [t]here can be no actionable negligence . . . unless there exists a cognizable duty of care.'"  Mazurek v. Great American Ins. Co., 284 Conn. 16, 29 (2007) (quoting Murdock v. Croughwell, 268 Conn. 559, 566 (2004).

> "The existence of a duty is a question of law and only if such a duty is found to exist does the trier of fact then determine whether the defendant violated that duty in the particular situation at hand . . . [T]he test for the existence of a legal duty of

---

[8]  Where, as here, a party does not respond to an adversary's Local Rule 56.1 statement, that party is deemed to have admitted all of the facts set forth in the Rule 56.1 statement.  See Amnesty Int'l USA Clapper, 638 F.3d 118, 129 n. 13 (2d Cir. 2011) (citing Gubitosi v. Kapica, 154 F.3d 30, 31 n.1 (2d Cir. 1998)); see also S.D.N.Y. Local Rule 56.1(c)("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed admitted for purpose of the motion unless specifically controverted by a corresponding numbered paragraph in the statement required to be served by the opposing party.").

care entails (1) a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result, and (2) a determination, on the basis of a public policy analysis, of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in the case . . .  The first part of the test invokes the question of foreseeability, and the second part invokes the question of policy."

Neuhaus v. DeCholnoky, 280 Conn. 190, 217-18 (2006) (quoting Mendillo v. Board of

Education, 246 Conn. 456, 483-84 (1998).

        "[The] first step in an analysis of whether a duty exists and the extent of the

defendant[s'] duty . . . is to determine the foreseeability of the plaintiff [s'] injury . . . It is a well

established tenet of . . .  tort jurisprudence, however, that [d]ue care does not require that one

guard against eventualities which at best are too remote to be reasonably foreseeable . . . [A]

defendant [is] not required to take precautions against hazards [that are] too remote to be

reasonably foreseeable . . . Due care is always predicated on the existing circumstances."

Lachowicz v. Rugens, 119 Conn. App. 866, 869 (2010) (internal quotation marks omitted).

"The requisite duty to use care may stem from a contract, from a statute, or from circumstances

under which a reasonable person would anticipate that harm of the general nature of that

suffered was likely to result. . . . Negligence cannot be predicated upon the failure to perform an

act which the actor was under no duty or obligation to perform."  Sheiman v. Lafayette Bank &

Trust Co., 4 Conn. App. 39, 45 (1985).  "If a court determines, as a matter of law, that a

defendant owes no duty to a plaintiff, the plaintiff cannot recover in negligence from the

defendant."  Pelletier v. Sordoni/Skanska Construction Co., 286 Conn. 563, 593 (2008) (quoting

Maffucci v. Royal Park Ltd. Parternship, 243 Conn. 552, 567 (1998).

2.      **Common Carriers and Duty of Care**

Under Connecticut law, "[a]n entity is a common carrier of passengers if it undertakes [to carry] for hire, indiscriminately, all persons who may apply for passage, provided there is sufficient space and room available and no legal excuse exists for refusing to accept them." Michel v. Foster, No. 50 84 23, 1991 WL 27901, at *2 (Conn. Super. Ct. Jan. 17, 1991) (citing Hunt v. Clifford, 152 Conn. 540, 543 (1965); see also Conn. Gen. Stat. § 13b-2(6) (2013) (defining the term "motor carrier" as "any person who operates motor vehicles over the highways of this state, whether over regular or irregular routes, in the transportation of passengers or property, or any class or classes thereof, for hire by the general public or for hire under special and individual contracts. . . .").

"A common carrier of passengers for hire has the duty to use the utmost care consistent with the nature of its business to guard its passengers against all dangers which might reasonably and naturally be expected to occur, in view of all the circumstances. . . ." Parkes v. Greyhound Lines Inc., No. CV010805839S, 2001 WL 1468751, at *1 (Conn. Super. Ct. Nov. 1, 2001) (citing Josephson v. Meyers, 180 Conn. 302, 305 (1980)); see also Parlato v. Connecticut Transit, 181 Conn. 66, 67 (1980)(same). "The high standard of care to which a common carrier is held, however, does not make it an insurer of the plaintiff's safety." Green v. H.N.S. Mgmt. Co., 91 Conn. App. 751, 759 (2005) (citing Bowes v. New England Transportation Co., 126 Conn. 200, 205 (1940). "[A] common carrier is not required to guard a passenger against all hazards. . . ." D. Wright, J. Fitzgerald & W. Ankerman, Connecticut Law of Torts (3d Ed. 1991) § 85, p. 249.

3.     **Agency**

"Agency is defined as the fiduciary relationship that arises when one person (a

principal) manifests assent to another person (an agent) that the agent shall act on the principal's

behalf and subject to the principal's control, and the agent manifests assent or otherwise

consents so to act.  1 Restatement (Third), Agency, § 1.01, p. 17 (2006)."  LeBlanc v. New

England Raceway, LLC, 116 Conn. App. 267, 274 (2009).

"[T]he three elements required to show the existence of an agency relationship

include:  (1) a manifestation by the principal that the agent will act for him; (2) acceptance by

the agent of the undertaking; and (3) an understanding between the parties that the principal will

be in control of the undertaking."  Botticello v. Stefanovicz, 177 Conn. 22, 25 (1979) (citing

Restatement (Second), Agency § 1, comment b (1958)).

"[I]t is a general rule of agency law that the principal in an agency relationship is

bound by, and liable for, the acts in which his agent engages with authority from the principal,

and within the scope of the [agency relationship]."  Maharishi School of Vedic Sciences, Inc.

(Connecticut) v. Connecticut Constitution Associates Ltd. Partnership, 260 Conn. 598, 606

(2002); see also Hallas v. Boehmke & Dobosz, Inc., 239 Conn. 658, 673 (1997) (same);

Gateway Co. v. DiNoia, 232 Conn. 223, 239-40 (1995) (same).

"An agent's authority may be actual or apparent," and "[a]ctual authority may

be express or implied."  Maharishi, 260 Conn. at 606-07.

> Actual authority exists when "[an agent's] action [is] expressly authorized . . . [is] impliedly authorized . . . or . . . although not authorized, [is] subsequently ratified by the [principal]. . . . Implied authority is actual authority circumstantially proved.  It is the authority which the principal intended his agent to possess. . . .  Implied authority is a fact to be proven by deductions or inferences from the manifestations of consent of the principal and from the acts of the principal and [the] agent."

Id. at 606-08 (quoting Czarnecki v. Plastics Liquidating Co., 179 Conn.261, 268 (1979);

Connecticut National Bank v. Giacomi, 242 Conn. 17, 70 (1997).

       "Apparent authority is that semblance of authority which a principal, through his

own acts or inadvertences, causes or allows third persons to believe his agent possesses." Lewis

v. Michigan Millers Mutual Ins. Co., 154 Conn. 660, 665 (1967); see Restatement (Second),

Agency § 8 (1958).  "Apparent authority is to be determined, not by the agent's own acts, but

by the acts of his principal." Nowak v. Capitol Motors, Inc., 158 Conn. 65, 69 (1969).  In order

for an agent to have "apparent authority,"

> the acts of the principal must be such that (1) the principal held the agent out as
> possessing sufficient authority to embrace the act in question, or knowingly permitted
> him to act as having such authority, and (2) in consequence thereof the person dealing
> with the agent, acting in good faith, reasonably believed, under all the circumstances,
> that the agent had the necessary authority.

Id. (citing Quint v. O'Connell, 89 Conn. 353, 357 (1915); Washington Cedar & Fir Products Co.

v. Elliott, 91 Conn. 350, 353 (1917); Zazzaro v. Universal Motors, Inc., 124 Conn. 105, 110

(1938); Fireman's Fund Indemnity Co. v. Longshore Beach & Country Club, Inc., 127 Conn.

493, 497 (1941); Presta v. Monnier, 145 Conn. 694, 699 (1958); Baumert-Moran Sales Co. v.

Red Bird Truck Rental Corporation, 149 Conn. 42, 44 (1961).

       Connecticut courts look to, inter alia, the following factors in determining

whether an agency relationship exists:

> whether the alleged principal has the right to direct and control the work of the
> agent; whether the agent is engaged in a distinct occupation; whether the principal
> or the agent supplies the instrumentalities, tools, and the place of work; and the
> method of paying the agent. . . .  In addition, [a]n essential ingredient of agency is
> that the agent is doing something at the behest and for the benefit of the principal
> . . . . Finally, the labels used by the parties in referring to their relationship are not
> determinative; rather, a court must look to the operative terms of their agreement
> or understanding.

<u>Beckenstein v. Potter & Carrier, Inc.</u>, 191 Conn. 120, 133-34 (1983) (internal quotation marks omitted).  Central to the agency determination is whether there was "an understanding between the parties that the principal will be in control of the undertaking."  <u>Botticello</u>, 177 Conn. at 25.

Based on the level of control, an entity or a worker may be an independent contractor rather than an agent.  Under Connecticut law,

> an independent contractor is one who, exercising an independent employment, contracts to do a piece of work according to his own methods and without being subject to the control of his employer, except as to the result of his work. . . . The fundamental distinction between an employee and an independent contractor depends upon the existence or nonexistence of the <u>right</u> to <u>control</u> the means and methods of work . . . "It is not the fact of actual interference with the control, but the right to interfere, that makes the difference between an independent contractor and a servant or agent."

<u>Nationwide Mutual Ins. Co. v. Allen</u>, 83 Conn. App. 526, 534 (Conn. App. Ct. 2004) (quoting <u>Tianti v. William Raveis Real Estate, Inc.</u>, 231 Conn. 690, 697 (1995) (emphasis in original).

It is well settled that '"[t]he nature and extent of an agent's authority is a question of fact for the trier where the evidence is conflicting or where there are several reasonable inferences which can be drawn.'"  <u>Maharashi</u>, 260 Conn. at 606 (quoting <u>Il Giardino, LLC v. Belle Haven Land Co.</u>, 254 Conn. 502, 531(2000); <u>Czarnecki</u>, 179 Conn. at 268); <u>see</u> <u>also</u> <u>Beckenstein</u>, 191 Conn. at 133 ("The existence of an agency relationship is a question of fact."); <u>Conte v. Dwan Lincoln-Mercury, Inc.</u>, 172 Conn. 112, 124 (1976) ("The existence of an agency relationship is generally one of fact."); <u>McLaughlin v Chicken Delight, Inc.</u>, 164 Conn. 317, 323-24 (1973) ( "The question of the existence or nonexistence of an agency relationship is ordinarily one of fact to be determined by the trier of fact.  It is only in the clearest circumstances, where no other conclusion could reasonably be reached, that the determination of fact by the trier may be disturbed.  The trier of fact has to consider all the evidence and then come to its conclusion.")

"The burden of proving agency [is] on the plaintiff," <u>Cyclone Fence Co. v.</u> <u>McAviney</u>, 121 Conn. 656 (1936), and "it must be proved by a fair preponderance of the evidence." <u>Leary v. Johnson</u>, 159 Conn. 101, 105 (1970).

  **B.**  **Analysis**

    **1.**  **Swift**

  Swift was operating a motor vehicle for hire and owed a duty of care to the Plaintiff as a passenger in the vehicle he was operating.  The record demonstrates that the van Swift was driving veered off Interstate 95 and struck a tree and telephone pole, causing Plaintiff to suffer serious injuries.  (Pltf. R. 56.1 Stmt. ¶¶ 67-68, 71, 74-76, 87-93)  A police report states that "[b]ased on [Swift]'s statement and physical evidence at the scene, [Swift] was found at fault for the motor vehicle accident."  (<u>See</u> Pltf. R. 56.1 App. Ex., 19 (Police Report))  The report also notes that an infraction was issued to Swift for violation of "Connecticut General Statute 14-236 Failure to Maintain Lane."  (<u>Id.</u>)

  Swift has offered no evidence demonstrating that there is a material issue of fact as to any of the elements of negligence:  duty, breach of duty, causation and actual injury. <u>Mazurek</u>, 284 Conn. at 29.  Swift has likewise not filed a response to Plaintiff's Local Rule 56.1 statement, which means that all of Plaintiff's factual allegations are deemed admitted.  Under these circumstances, Plaintiff is entitled to summary judgment on liability as against Swift.  <u>See</u> <u>Warner v Liimatainen</u>, 153 Conn. 163, 164 (1965) (summary judgment on liability granted in favor of passenger after driver's automobile went off the highway and hit a light pole); <u>DeJesus</u> <u>v. Rowe</u>, No. CV010446290S, 2002 WL 172666, at *3 (Conn. Super. Ct. Jan. 8, 2002) (summary judgment on liability granted in negligence case where defendant's car struck plaintiff's vehicle; "While 'issues of negligence are ordinarily not susceptible of summary

adjudication,' the evidence submitted by the plaintiff in support of her motion for summary judgment, coupled with the fact that the defendant has not provided any supporting affidavit or other documentary evidence to rebut the facts as presented, demonstrate that the plaintiff has met her burden of proof to show that no genuine issues of material fact remain as to the issue of liability.  This case fits into the exception of the general rule concerning summary judgment in negligence cases and therefore plaintiff's motion for summary judgment as to liability only is granted.")

### 2.     Shadys

Plaintiff has also moved for summary judgment on liability as against Shadys. Under Connecticut law, there is a rebuttable presumption that a negligent operator of a motor vehicle – who is not the owner of the vehicle – is the "agent and servant of the owner" and was acting within the scope of his employment:

> In any civil action brought against the owner of a motor vehicle to recover damages for the negligent or reckless operation of the motor vehicle, the operator, if he is other than the owner of the motor vehicle, shall be presumed to be the agent and servant of the owner of the motor vehicle and operating it in the course of his employment.  The defendant shall have the burden of rebutting the presumption.

Conn. Gen. Stat. § 52-183 (2013).  Here, it is undisputed that Shadys is the owner of the motor vehicle and that Swift was operating the vehicle as part of his duties as a Shadys employee. (See Pltf. R. 56.1 Stmt. ¶73; Pltf. R. 56.1 App., Ex. 19 (Police Report))  Shadys has offered no evidence to rebut the presumption that Swift is an agent of Shadys and was acting within the scope of his employment.  Given this presumption, and the facts as to Shadys that are set forth in Plaintiff's Rule 56.1 statement (and that are deemed admitted), Plaintiff is entitled to summary judgment on liability as to Shadys.

3.      **Future**

As noted above, Plaintiff claims that she is entitled to summary judgment on liability as to Future because (1) it breached the duty of care it owed her as a common carrier; and (2) it had an agency relationship with Shadys.  (Pltf. Br. (Dkt. No. 44) at 2)

a.      **Common Carrier**

Future contends that it cannot be held liable as a common carrier because (1) the Amended Complaint does not plead that Future is a "common carrier"; (2) it was not acting as a common carrier when Plaintiff was injured, because it was not then transporting her; and (3) even if, at the time of the accident, Future continued to owe Plaintiff a common carrier's duty of care, it did not breach that duty.  (Future Br. (Dkt. No. 40) at 16 n.7, 17, 18)

Future's first argument is easily dispatched.  While the Amended Complaint does not use the term "common carrier," Plaintiff pled that Future is a "for-hire interstate motor carrier of passengers."  (See Am. Cmplt. ¶¶ 18, 19, 25)  This allegation is sufficient to put Future on notice that Plaintiff intends to claim that Future is a common carrier.  See Conn. Gen. Stat. § 13b-2 (defining "motor carrier" to mean "any person who operates motor vehicles over the highways of this state, whether over regular or irregular routes, in the transportation of passengers or property, or any class or classes thereof, for hire by the general public or for hire under special and individual contracts. . . .").

There is also no question that Future is a "common carrier," as that term is defined under Connecticut law.  Future "undertakes [to carry] for hire, indiscriminately, all persons who may apply for passage."  Michel, 1991 WL 27901, at *2.  As noted above, a common carrier of passengers for hire has "the duty to use the utmost care consistent with the nature of its business to guard its passengers against all dangers." Parlato v. Connecticut

16

Transit, 181 Conn. 66, 67 (1980).  A common carrier's "'special duty begins when, in the act of entering his vehicle, the actual relation of passengers to carrier is assumed.'"  McCarten v Town of Manchester, No. X04HHDCV095034624S, 2010 WL 5158252, at *3 (Conn. Super. Ct. Nov. 24, 2010) (quoting Cadwell v. Watson, 134 Conn. 640, 646 (1948)).

Citing no law, however, Future argues that "it is questionable whether Future's special duties as a common carrier are even implicated in this matter," "because Future was not even transporting the plaintiff at the time of Shadys' driver's accident."  (Future Reply Br. (Dkt. No. 41) at 17; Future Br. (Dkt. No. 40) at 18)  Bradberry v. Peter Pan Bus Lines, No. CV106003611, 2012 WL 1662234 (Conn. Super. Ct. April 18, 2012), indicates, however, that Future's duty of care to Plaintiff did not end when it "farmed-out" the return trip to Shadys.

In Bradberry, the plaintiff purchased a bus ticket from Greyhound for passage to New Britain, Connecticut.  "At some point during the trip to New Britain, Greyhound assigned to Peter Pan [Bus Lines] the responsibility of transporting the plaintiff the remainder of the way to New Britain."  Bradberry, 2012 WL 1662234, at *1.  After boarding the Peter Pan bus, plaintiff was injured.  She sued Greyhound for negligence, and Greyhound

> move[d] for summary judgment claiming that the alleged incident did not occur on a Greyhound bus, and therefore Greyhound did not owe a duty to the plaintiff, and liability for any personal injuries sustained by the plaintiff is the sole responsibility of Peter Pan.

Id.  Plaintiff argued, however,

> that Greyhound, as a common carrier, owed a duty to the plaintiff for safe transportation to New Britain when the plaintiff purchased his ticket from Greyhound.  [Plaintiff further argued that] Greyhound could not be relieved of its duty for safe transportation simply by enlisting another entity to complete the transportation.

Id. at *2.  The court denied Greyhound's motion for summary judgment, finding that "Greyhound owed the plaintiff a duty to provide safe transportation to the plaintiff when the

17

plaintiff purchased a ticket from Greyhound."  Id.  While the matter is not free from all doubt, the court concludes that Future has not demonstrated that its duty of care to Plaintiff ended when Future "farmed-out" the return trip to Shadys.[9]

        The final issue as to common carrier liability raised by Plaintiff's motion is whether Plaintiff has demonstrated as a matter of law that Future breached the duty of care it owed to her.  The court concludes that Plaintiff has not met the demanding standard for granting summary judgment on liability in a negligence case:

> It is . . . well established that "[s]ummary judgment procedure is especially ill-adapted to negligence cases, where, as here, the ultimate issue in contention involves a mixed question of fact and law, and requires the trier of fact to determine whether the standard of care was met in a specific situation." (Internal quotation marks omitted.)  Michaud v. Gurney, 168 Conn. 431, 434 (1975); see also Fogarty v. Rashaw, 193 Conn. 442, 446 (1984); DiUlio v. Goulet, 2 Conn.App. 701, 703 (1984).  A determination of negligence is necessarily one of fact.  Michaud v. Gurney, supra, 434; Cappiello v. Haselman, 154 Conn. 490, 495 (1967); Balboni v. Stonick, 2 Conn.App. 523, 527 (1984).  As such, "[i]ssues of negligence are ordinarily not susceptible of summary adjudication but should be resolved by trial in the ordinary manner."  Spencer v. Good Earth Restaurant Corp., 164 Conn. 194, 199 (1972); see also Amendola v. Geremia, 21 Conn. App. 35, 37, cert. denied, 215 Conn. 803 (1990).

Maffucci v. Royal Pk. Ltd. Partner, 42 Conn. App. 563, 568 (1996).

        Plaintiff has not demonstrated as a matter of law that Future was negligent in retaining Shadys to perform the return trip from Manhattan.  The record demonstrates that Future had "farmed-out" one other job to Shadys, without incident.  Plaintiff has not shown as a matter of law that Future should have realized that it was exposing Plaintiff to an unreasonable risk of physical harm when it referred the return trip to Shadys.  Accordingly, Plaintiff's motion

---

[9]  Future's reliance on Davies v. General Tours, Inc., 63 Conn. App. 17, 25, 28 (2001) is entirely misplaced.  The defendant in that case was not a common carrier, but instead was a travel agent that the plaintiff had used to charter a tour of Morocco.  The court concluded that the travel agent did not have an agency relationship with the tour operator in Morocco and had no duty to warn plaintiff of the dangers of traveling by bus in Morocco.  Davies sheds no light on the issues here.

for summary judgment on liability as to Future will be denied, to the extent that that motion is based on Future's status as a common carrier.  <u>See</u> Restatement (Second), Torts, § 314A, Comment e ("[t]he duty in each case is only one to exercise reasonable care under the circumstances.").

### b. <u>Agency</u>

Plaintiff argues, in the alternative, that she is entitled to summary judgment against Future on an agency theory.  (Pltf. Br. (Dkt. No. 44) at 2; Pltf. Opp. Br. (Dkt. No. 48) at 11)  Future contends, however, that Shadys was an independent contractor and not its agent. (Future Br. (Dkt. No. 40) at 6-14)  As noted above, "[t]he question of the existence or nonexistence of an agency relationship is ordinarily one of fact to be determined by the trier of fact."  <u>McLaughlin</u>, 164 Conn. at 323; <u>see also</u> <u>Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc.</u>, 697 F.3d 59, 71 (2d Cir. 2012) (applying Connecticut law and stating that the "existence and scope of an agency relationship can be resolved as a matter of law" only where "facts are undisputed" or "there is but one way for a reasonable jury to interpret them.").

To the extent that Plaintiff is proceeding on a theory of apparent authority, there is an obvious material issue of fact that precludes summary judgment.  Douich testified that he told Plaintiff – before the van left the vicinity of Pacha in Manhattan – "it's not my vehicle, it's not my driver, I'm going to find out what's going on."  (Pltf. R. 56.1 App., Ex. 11 (K. Douich Dep.) at 151-54)  As noted above, Plaintiff disputes this account, and claims that she did not learn until long after the accident that the van and driver were not from Future.  (Pltf. R. 56.1 Stmt. ¶ 40)  But Douich's testimony is sufficient to create an issue of fact as to whether it would have been reasonable for Plaintiff to believe – when the van left Manhattan for Connecticut –

that Future had "the right to direct and control the work of [Swift]." <u>Beckenstein</u>, 191 Conn. at 133.

        As to actual authority, this is not the unusual case where an agency relationship can be determined as a matter of law. There is evidence that cuts both ways. Future provided the trip itinerary to Shadys and also controlled what Shadys would be paid. Moreover, Shadys was performing the return trip from Manhattan at Future's "behest." The evidence also indicates that Shadys' employees reported to Douich about aspects of the trip. For example, Swift called Douich to inform him that he had succeeded in starting the van and had begun the return trip to Connecticut. And when Swift got into an accident, a Shadys driver – "Kawtar" – called Douich to inform him of the mishap.

        On the other hand, it was Shadys – and not Future – that selected Swift to perform the return trip. Future likewise did not provide the van that Swift was driving, and Swift was free to choose whatever route he deemed appropriate in driving Plaintiff and her party back to Easton.

        To the extent that Plaintiff's summary judgment motion on liability as to Future is based on an agency theory, her motion must be denied. As the cases cited above indicate, summary judgment with respect to the existence of an agency relationship is appropriate "only in the clearest circumstances"; this is not that case. <u>See</u> <u>McLaughlin</u>, 164 Conn. at 323-24.

## IV.   <u>FUTURE'S MOTION FOR SUMMARY JUDGMENT AS AGAINST PLAINTIFF</u>

        Future has moved for summary judgment on all of Plaintiff's claims against it.

### A.   <u>Direct Negligence</u>

        As discussed above, this Court concludes that Future was a common carrier at the time of the accident, and that Future has not demonstrated as a matter of law that its duty of

care to Plaintiff ended when it chose to "farm-out" the return trip to Shadys.  As a common carrier, Future had a "duty to use the utmost care consistent with the nature of its business to guard [Plaintiff] against all dangers which might reasonably and naturally be expected to occur, in view of all the circumstances. . . ."  Parkes, 2001 WL 1468751, at *1; see also Parlato, 181 Conn. at 67 (same).   It is a jury question whether Future met this high standard here.

Future was aware that the Shadys van in which Plaintiff was traveling was in such poor condition that it had significantly delayed the return trip to Easton.  Indeed, the van was initially inoperable when Plaintiff and her party left Pacha.  Douich was also aware that Swift was not able to even start the van until 4:25 a.m.  It is a fair inference that Swift later fell asleep at the wheel, and drove the van off Interstate 95 at approximately 5:20 a.m., causing serious injury to Plaintiff.  See Pltf. R. 56.1 App., Ex. 19 (Police Report).  Whether Future met its duty of "utmost care" under these circumstances cannot be resolved as a matter of law.  Accordingly, Future's motion for summary on the First Cause of Action – direct negligence – will be denied.

### B.   Vicarious Liability

Future argues that it is entitled to summary judgment on Plaintiff's Second Cause of Action – for vicarious liability – because (1) Shadys and Swift were independent contractors and not its agents; and (2) Connecticut does not recognize an apparent agency theory of liability in tort cases.  (Future Br. 6, 12)

For the reasons discussed above, there are material issues of fact concerning, inter alia, the amount of control Future had over Shadys and Swift.  Accordingly, Future is not entitled to summary judgment with respect to Plaintiff's actual agency theory of liability.

As to "apparent agency" or "apparent authority," "Connecticut . . . has yet to apply the doctrine of apparent authority to allow for a principal to be held liable to a third person who was harmed by the tortious conduct of a person held out as the principal's agent." L and V Contractors, LLC v Heritage Warranty Ins. Risk Retention Group, Inc., 136 Conn. App. 662, 669 (2012); see also Davies v. General Tours, Inc., 63 Conn. App. 17, 31 (2001) (apparent authority "theory is not a viable ground on which to premise liability against a defendant sued for the torts of an alleged agent."); Mullen v. Horton, 46 Conn. App. 759, 771 (1997) ("In Connecticut, . . . the doctrine of apparent authority has never been used [as a basis to attach tort liability].").  Accordingly, the doctrine of apparent authority does not provide a basis under Connecticut law to hold Future vicariously liable for any tort committed by Shadys or Swift.[10]

Plaintiff argues, however, that should the Court determine that under Connecticut law the apparent authority theory of liability is not available to her, New York's choice of law public policy doctrine requires that contrary New York law be applied.  (Pltf. Opp. Br. (Dkt. No. 48) at 19)

"'The public policy doctrine is an exception to implementing an otherwise applicable choice of law in which the forum refuses to apply a portion of foreign law because it is contrary or repugnant to its State's own public policy.'"  Roberts ex rel. Phillip v. Happiness

---

[10]  The cases cited by Plaintiff are not to the contrary.  They either do not sound in tort, see Quint v. O'Connell, 89 Conn. 353 (1915) (involving the sale of goods); Beckenstein v. Potter Carrier, Inc., 191 Conn. 120 (1983) (involving the quality of craftsmanship); and Trinity Rent-A-Car, Inc. v. Heating Services & Installation Co., 4 Conn. Cir. Ct. 404 (1967) (involving a contract dispute over a rental automobile), or involve medical care, see Francisco v. Hartford Gynecological Ctr., Inc., CV92-0513841 S, 1994 WL 76103 (Conn. Super. Ct. Mar. 1, 1994); Wilverding v Ostrowitz, CV 960334949S, 2000 WL 279111 (Conn. Super. Ct. Feb. 28, 2000); Center. v Kost, NNHCV085021444S, 2011 WL 3891505 (Conn. Super. Ct. Aug. 4, 2011); Wellons v Bristol Hosp., HHBCV095014713S, 2012 WL 2044639 (Conn. Super. Ct. May 10, 2012), an area in which Connecticut courts apply a different rule.

is Camping Inc., No. 10 Civ. 4548 (BSJ), 2012 WL 844331 (S.D.N.Y. Mar. 13, 2012) (quoting

Schultz v. Boy Scouts of Am., 65 N.Y.2d 189, 202 (1985).  "The doctrine is considered only

after the court has determined that the applicable substantive law under relevant choice-of-law

principles is not the forum's law," and "[t]he party seeking to invoke the doctrine" bears the

heavy burden of "proving that the foreign law is contrary to New York public policy."  Schultz,

65 N.Y.2d at 202.

        A party seeking application of the public policy doctrine must establish that the

applicable foreign law violates some "fundamental principle of justice, some prevalent

conception of good morals, some deep-rooted tradition of the common weal" as found in New

York's "Constitution, statutes and judicial decisions."  Id. (internal quotations omitted).  In

addition, the proponent must also "establish that there are enough important contacts between

the parties, the occurrence and the New York forum to implicate [New York] public policy and

thus preclude enforcement of the foreign law."  Id.  "This burden is a heavy one, and may be

carried only by reference to specific state policy embedded in New York State's constitution,

statutes, or judicial decisions."  O'Connor v. United States Fencing Ass'n, 260 F. Supp. 2d 545,

560 (E.D.N.Y. 2003).

        Here, as an initial matter, Plaintiff has not demonstrated that New York law

differs from Connecticut law in the availability of the apparent authority theory of liability in

tort cases.  While Plaintiff has cited cases (see Pltf. Opp. Br. (Dkt. No. 48) at 20) demonstrating

that New York, like Connecticut, recognizes the apparent authority theory of liability in the

context of medical care, see Mduba v. Benedictine Hospital, 52 A.D.2d 450 (3rd Dept. 1976)

and Sampson v. Contillo, 55 A.D.3d 588 (2nd Dept. 2008), Plaintiff has not provided authority

demonstrating that New York has extended the doctrine beyond this setting.

Even assuming <u>arguendo</u> that New York law differs from Connecticut law on this issue, Plaintiff has not satisfied her "heavy burden" of demonstrating that Connecticut law concerning apparent authority is "repugnant" to New York's public policy and violates "some fundamental principles of justice, some prevalent conception of good morals, some deep rooted tradition of common weal." <u>Schultz</u>, 65 N.Y.2d at 202. Indeed, Plaintiff makes no effort to cite "specific state policy embedded in New York State's constitution, statutes, or judicial decisions" demonstrating that a failure to recognize an apparent authority theory of liability here would be "repugnant" to New York's public policy. <u>See</u> <u>O'Connor</u>, 260 F. Supp. 2d at 560.

Future is entitled to summary judgment on Plaintiff's vicarious negligence claim to the extent that it is founded on a theory of apparent authority.

### C.    <u>Negligent Hiring</u>

Future seeks summary judgment on Plaintiff's negligent hiring claim (Am. Cmplt., Fourth Cause of Action), arguing that there is no evidence that Future knew or should have known that Swift, Shadys' driver, would get into an accident. (Future Br. (Dkt. No. 40) at 14-16) Plaintiff does not address this point.

Generally, an employer will be liable in "any situation where a third party is injured by an employer's own negligence in failing to select an employee fit or competent to perform the services of employment." <u>Shore v. Stonington</u>, 187 Conn. 147, 155 (1982). "The test that is often applied in determining whether there exists a duty to use care is . . . the foreseeability or anticipation that harm of the general nature of that suffered would be likely to result, which gives rise to a duty to use due care, breach of which might constitute negligence." <u>Seguro v. Cummiskey</u>, 82 Conn. App. 186, 192 (2004). "[A] plaintiff must allege that the employer knew or should have known that the employee's activities before he was hired were

such that the employer should have been aware that the employee was reasonably likely to engage in conduct of the general sort which caused the plaintiff harm." <u>Faggio v. Brown</u>, X04CV054003488S, 2006 WL 1529751, at *1 (Conn. Super. Ct. May 17, 2006) (citing <u>DeMaria v. Country Club of Fairfield</u>, No. CV02365908S, 2003 WL 356700, at *4 (Conn. Super. Ct. Jan. 17, 2003); <u>see also</u> <u>Vasudevan v. Pragosa</u>, No. HHDCV054012416., 2006 WL 328367 (Conn. Super. Ct. Jan. 23, 2006) (employer knew or should have known that employee had the propensity to engage in the conduct which breached the duty toward the third party).

"It is well settled that defendants cannot be held liable for their alleged negligent hiring, training, supervision or retention of an employee accused of wrongful conduct unless they had notice of said employee's propensity for the type of behavior causing the plaintiff's harm." <u>Elbert v Connecticut Yankee Council, Inc.</u>, CV010456879S, 2004 WL 1832935, at *13 (Conn. Super. Ct. July 16, 2004) (citing <u>Knicrumah v. Albany City School District</u>, 241 F. Supp. 2d 199, 211 (N.D.N.Y. 2003).

Here, the Amended Complaint does not plead that Future knew or should have known that Shadys' drivers or Swift in particular had a propensity to drive in a negligent fashion. Moreover, Plaintiff has not cited any evidence demonstrating that Shadys' drivers or Swift in particular had a propensity to drive in a negligent fashion. Indeed, the evidence is that Future had "farmed-out" one prior job to Shadys without incident. Accordingly, Future's motion for summary judgment with respect to the Amended Complaint's Fourth Cause of Action for negligent hiring will be granted.

## CONCLUSION

Plaintiff's motion for summary judgment on liability is granted in part and denied in part, as set forth above.  Future's motion for summary judgment on Plaintiff's claims is granted in part and denied in part as set forth above.  Future's motion for summary judgment as to the cross-claims of Shadys and Swift is denied.  The Clerk of the Court is directed to terminate the motions (Dkt. Nos. 33 and 36).

The parties are directed to comply with this Court's Individual Rules concerning the preparation of a pre-trial order.  The joint pre-trial order will be filed on November 15, 2013.  Motions in limine, voir dire requests, and requests to charge are due on November 15, 2013.  Responsive papers, if any, are due on November 22, 2013.  Trial will commence on December 16, 2013, at 9:00 a.m., in Courtroom 705 of the Thurgood Marshall U.S. Courthouse, 40 Foley Square.

Dated: New York, New York
        September 24, 2013

SO ORDERED.

Paul G. Gardephe
United States District Judge